# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
ONE RED APPLE I-PHONE CURRENTLY IN THE POSSESSION OF ATF

Case No. 19-1148M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the **Eastern** District of **Pennsylvania**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(a)(1); | Dealing in firearms without a license; Felon in possession of a firearm; Possession |
| 18 USC § 922(g)(1); | with intent to distribute cocaine base. |
| 21 USC §841(a)(1). | |

The application is based on these facts:

See attached affidavit of Special Agent Justin Hines.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

JUSITN HINES, SPECIAL AGENT, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/3/19

*Judge's signature*

City and state: Philadelphia, Pennsylvania

HONORABLE MARILYN HEFFLEY, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE RED APPLE I-PHONE CURRENTLY IN THE POSSESSION OF ATF | Mag No. 19-1148M |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Justin Hines, being duly sworn, do hereby depose and state as follows:

## BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one electronic device, an Apple iPhone—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since December 2015. Prior to joining ATF, I was employed as a Special Agent of the U.S. Department of State, Diplomatic Security Service for approximately three years. Before becoming a Special Agent, I served honorably in the United States Army for six years. I am currently assigned to a specialized enforcement group, the ATF Firearms Trafficking Group, whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms violations. During my tenure as an ATF agent, I have conducted and participated in numerous investigations, which have resulted in the arrest and prosecution of individuals who have committed violations of federal law, including but not limited to firearms offenses and

narcotics trafficking.

3. During the course of my law enforcement career, I have received extensive training regarding violations of federal law, with an emphasis on federal firearms violations. My law enforcement experience has included numerous investigations of firearm and drug-related offenses. These investigations have resulted in the seizure of various controlled substances and firearms. I have conducted numerous interviews with individuals charged with controlled substance and firearm violations. I have conducted numerous investigations that included evidence found on electronic devices, including smartphones.

4. The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other special agents or other law enforcement officers, as well as official reports of law enforcement. This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts set forth in this affidavit, I submit that probable cause exists to search and conduct a forensic examination of the Device described in Attachment A in order to seek the items described in Attachment B, all of which is evidence of the specified offenses described below.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The property to be searched is the following: A Red Apple I-Phone wireless phone, lawfully seized from defendant Eleigh GRAY on June 21, 2019, pursuant to an arrest (hereinafter the "Device"). The Device is currently located at ATF, 200 Chestnut Street, Room 504, Philadelphia, Pennsylvania 19106.

7. I request authorization to search the Device and to conduct a forensic examination

of it to identify electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. Since approximately October of 2018, I have been investigating a suspected firearms trafficking scheme involving the illegal trafficking of firearms and narcotics in Philadelphia, Pennsylvania. To summarize, between October 2018 and June 21, 2019 the Government had numerous contacts with Defendant GRAY via text messages from (267)-370-2277 (Target Number) a number associated with Defendant GRAY. These contacts resulted in purchases of contraband by an ATF Task Force Officer (TFO) acting in an undercover capacity and ultimately the arrest of GRAY by ATF and the seizure of the Device.

9. On December 4, 2018, an ATF Task Force Officer (TFO), acting in an undercover capacity, purchased approximately 54.333 grams of crack cocaine from GRAY in Philadelphia, Pennsylvania. A lab analysis confirmed that the substance purchased from GRAY was approximately 54.333 grams of crack cocaine.

10. On December 13, 2018, the ATF TFO, acting in an undercover capacity, purchased approximately 56.193 grams of crack cocaine from GRAY in Philadelphia, Pennsylvania. A lab analysis confirmed that the substance purchased from GRAY was approximately 56.193 grams of crack cocaine.

11. Between June 9, 2019, and June 20, 2019, GRAY and the ATF TFO exchanged text messages from the Target Number regarding a firearm, a Glock model 22 .40 caliber pistol, which GRAY had for sale. During these exchanges, the TFO and GRAY agreed upon a price of $900 for the firearm, as well as a price of $2,400 for two ounces of crack cocaine to be delivered on June 21, 2019, in Philadelphia, Pennsylvania—for a total of $3,300. Later, GRAY provided a $100 discount for the crack cocaine making the total for the two items $3,200.

12. On June 21, 2019, GRAY and the TFO exchanged text messages from the Target Number. Later that same day GRAY met the TFO near 3720 Main Street, Philadelphia, Pennsylvania in the TFO's vehicle. GRAY and the TFO spoke for some time, including by discussing firearms generally. During the course of that conversation, GRAY stated that, in effect, he "always carries" a firearm.

13. During this discussion, GRAY also told the TFO that he had the crack cocaine on him for the sale, but someone else would be bringing the Glock pistol to the sale.

14. GRAY provided the TFO with approximately 56.4 grams of crack cocaine, which field testing later confirmed was crack cocaine.

15. During this meeting, GRAY was observed sending text messages to an unknown person using what appeared to be a red Apple iPhone. GRAY then placed a phone call to another unknown person whom he directed to "pull up" using what appeared to be a red Apple iPhone.

16. Shortly thereafter, another person ("Person 2") arrived near the TFO's vehicle in an SUV. Person 2 went to the SUV's trunk and retrieved a black bag. He then got inside of the rear passenger seat of the TFO's vehicle.

17. Person 2 provided the TFO with a Glock model 22 .40 caliber semi-automatic pistol bearing serial number: CDS783US.

18. The TFO provided GRAY with approximately $500 in pre-recorded buy money towards the purchase of the firearm and for the two ounces of crack cocaine from GRAY.

19. The TFO then left his vehicle, stating that he would get the remaining $2,700 from the trunk of his vehicle (in order to provide it to GRAY).

20. Shortly thereafter, ATF Agents arrested GRAY. In GRAY's possession was a Red Apple iPhone (the Device) as well as $500 in pre-recorded buy money provided to him by

the ATF TFO during the sale.

21. A NIK G field test was conducted on the narcotics provided to the TFO by GRAY. This test yielded a positive result for the presence of cocaine.

22. Based on law enforcement's observations on June 21, 2019, the red Apple iPhone that law enforcement seized from GRAY is the same iPhone that law enforcement observed GRAY communicating with Person 2 before Person 2's delivery of the firearm to the undercover ATF TFO in the TFO's vehicle. Further, the ATF TFO was texting with GRAY at the Target Number shortly before the two met to complete the sale of crack cocaine and a firearm, and law enforcement found no other phone on GRAY upon his arrest.

23. On June 21, 2019, a United States Magistrate Judge in this District, the Honorable Elizabeth T. Hey, approved a criminal complaint upon a finding of probable cause charging Eliegh GRAY with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) for his conduct on June 21, 2019, and possession with the intent to deliver 28 grams or more of cocaine base ("crack cocaine") under 21 U.S.C § 841 (a)(1), (b)(1)(b), for his conduct on December 4 and December 13, 2018. In addition to those crimes that probable cause was already established, this affidavit also establishes probable cause that on June 21, 2019, GRAY acted as an unlicensed firearms dealer under 18 U.S.C. § 922(a)(1)(A), and on that same date GRAY possessed with the intent to deliver 28 grams or more of crack cocaine under 21 U.S.C § 841 (a)(1), (b)(1)(b).

24. ATF records reveal GRAY is not licensed to deal, import or manufacture firearms and thus is prohibited from doing so under 18 U.S.C. § 922(a)(1)(A).

25. In any business, either legitimate or illicit, communicating with customers is the lifeblood of the business whether it be telephonically, via text messaging, or through social media.

In this example, GRAY utilized his phone to arrange the illicit sale of firearms and narcotics. Based on my training and experience, when firearms and narcotics traffickers sell their products to customers, they utilize wireless telephones to communicate with their customers, sometimes repeatedly. In these communications, sellers and buyers sometimes negotiate the price of the firearm or narcotics and provide pictures of the firearm for sale. Due to the firearms needing to be procured by a legal purchaser from the legal market to the illicit market as GRAY is prohibited from purchasing or possessing a firearm I believe there was communication and negotiation preceding the transfer of these firearm into the hands of prohibited persons. This could have been directly from GRAY, or via an intermediary assisting GRAY in the furtherance of his business in the trade of illegal firearms and narcotics. A search of these phones I believe could yield direct communications to facilitate the illegal transfer of these firearms and narcotics. Due to these facts, I believe GRAY communicated with Person 2 or an unknown person(s) whom provided him the firearm he was reselling. In addition to communications, most modern wireless telephones are capable of recording location data. This again could help identify the link to an individual or individuals trafficking firearms and narcotics into Philadelphia, PA. As a result, I believe the search of this phone will show evidence of how GRAY illegally obtained the firearm and narcotics he was reselling, and a possible intermediary supplying illegal firearms to the Philadelphia area.

26. The Device is currently in the lawful possession of ATF. The Device came into the possession of ATF after the phone was seized incident to Gray's lawful arrest on June 21, 2019.

27. The Device is currently in storage at ATF, 200 Chestnut Street Room 504, Philadelphia, Pennsylvania 19106. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

28. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include

various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to

that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

29. Based on my training, experience, research, and previous seizures and searches of similar Apple iPhones, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

*31. Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to facilitate the illegal distribution of firearms and narcotics, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant, which also may damage the Device.

33. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

34. I submit that probable cause exists to search and conduct a forensic examination of the Device described in Attachment A in order to seek the items described in Attachment B, all of which is evidence of the specified offenses.

Respectfully submitted,

Justin A. Hines
Special Agent
U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND SUBSCRIBED
BEFORE ME THIS ___
DAY OF JULY **3**, 2019.

HON. MARILYN HEFFLEY
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is the following: Red Apple I-Phone wireless phone, seized from defendant Eleigh GRAY on June 21, 2019 (hereinafter, the "Device"). The Device is currently located at ATF, 200 Chestnut Street, Philadelphia, Pennsylvania 19106.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 922(a)(1)(A) (dealing firearms without a license), 18 U.S.C. § 922(g)(1) (possession of a firearm by a prohibited person), 21 U.S.C § 841 (a)(1), (b)(1)(b) (possession with the intent to deliver cocaine base) and 18 U.S.C. § 2 (aiding and abetting), and involve Eliegh GRAY since May 4, 2018, including:

   a. Subscriber information contained within the Device;

   b. all lists of customers and related identifying information;

   c. types, amounts, and prices of firearms and narcotics trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of illegal firearms or narcotics (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording GRAY and Person 2's schedule or travel;

   f. all bank records, checks, credit card bills, account information, and other financial records;

   g. all communications between or among GRAY, Person 2, or others regarding firearms or narcotics;

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.